|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| NORTHERN DISTRICT OF CALIFORNIA | |

ARMANDO HERNANDEZ,
    Plaintiff,
    v.
JAMES BEARD, et al.,
    Defendants.

Case No. 14-cv-04650-DMR (PR)

**ORDER OF PARTIAL DISMISSAL AND SERVICE**

## INTRODUCTION

Plaintiff, a former state prisoner, filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 stemming from his incarceration at Pelican Bay State Prison ("PBSP"). Plaintiff has consented to magistrate judge jurisdiction, and this matter has been assigned to the undersigned Magistrate Judge.

He has also filed a non-prisoner motion for leave to proceed *in forma pauperis*, which will be granted in a separate written Order.

Venue is proper because the events giving rise to some of the claims are alleged to have occurred at PBSP, which is located in this judicial district. *See* 28 U.S.C. § 1391(b).

Plaintiff challenges his 2009 placement and his resulting retention in administrative segregation in the secure housing unit ("SHU") until his release in November 2014, on the basis of his alleged association with the Mexican Mafia ("EME") prison gang. Plaintiff denies that he is a gang associate, and he alleges multiple violations of the federal and state constitutions stemming from his original placement and five-year long retention in the SHU. Plaintiff names numerous Defendants from PBSP in Crescent City and the California Department of Corrections and Rehabilitation ("CDCR") in Sacramento. Plaintiff seeks injunctive relief and monetary damages.

Specifically, Plaintiff alleges the following claims:

(1) a violation of his First Amendment right of association on the ground that Plaintiff's confinement in the SHU was based solely on his associational activities with "family members, close family friends or with other prisoners where such association did not consist of

1    and were not in furtherance of any illegal prison gang activities, is reasonably related to legitimate

2    penological interests," (dkt. 1 at 19[1]);

3        (2)    a violation of his First Amendment right of association on the ground that

4    Plaintiff's confinement in the SHU and gang validation prevented him from associating with

5    "family members[,] close family friends or with alleged gang affiliates and inmates" (*id.*);

6        (3)    a violation of his First Amendment rights on the ground that Plaintiff's

7    confinement in the SHU "constitute[d] retaliatory action taken against Plaintiff for the exercise of

8    his constitutionally protected right to engage in legal and legitimate jailhouse lawyer activities

9    related to and in furtherance of providing legal assistance to other prisoners . . . ." (*id.* at 19-20);

10       (4)    a violation of his First Amendment rights and Fourteenth Amendment right to

11   equal protection based upon Defendants "effectively forbid[ding] prison inmates from associating

12   with members of their own racial group" and "validat[ing] inmates for association with members

13   of their own racial group only" (*id.* at 20);

14       (5)    a violation of his Eighth Amendment right to be free of cruel and unusual

15   punishment and Fourteenth Amendment due process rights based upon Defendants' placement of

16   Plaintiff in long-term administrative segregation in the SHU and "subjecting [him] to the

17   debriefing requirement," by which validated gang members renounce their gang membership,

18   divulge gang-related information, and earn their release back into the prison's general population

19   (*id.*);

20       (6)    a violation of his Eighth Amendment right to be free of cruel and unusual

21   punishment and Fourteenth Amendment due process rights based upon Defendants' placement of

22   Plaintiff in long-term administrative segregation in the SHU without a fair hearing and

23   Defendants' failure to act and investigate Plaintiff's claim that he is not a prison gang associate

24   (*id.* at 20-21);

25       (7)    a violation of his rights under 42 U.S.C. § 1985, which proscribes conspiracies to

26   interfere with certain civil rights (*id.* at 21);

---

[1] Page number citations refer to those assigned by the court's electronic case management filing system and not those assigned by Plaintiff.

      (8)    a violation of the Eighth Amendment right to be free of cruel and unusual punishment because of the severely restrictive conditions of confinement in the SHU (*id.* at 21);

      (9)    a violation of his Eighth Amendment right to be free of cruel and unusual punishment based upon that fact that Defendants had "intentionally inflicted severe physical and mental and suffering against Plaintiff for the purpose of obtaining information or a confession from him," which the court assumes is related to the debriefing process, even though Plaintiff had not yet debriefed (*id.* at 21);

      (10)    a violation of his Fourteenth Amendment right to equal protection based upon Defendants' intentional discrimination against him on the basis of his racial group (*id.* at 22);

      (11)    a violation of the state equal protection clause by "intentionally discriminating against him on the basis of his membership in a racial group" (*id.*);

      (12)    a violation of his state-created liberty interest based upon various problems with the procedures leading to his placement in the SHU and Defendants' refusal to release from the SHU (*id.* at 22-23);

      (13)    a violation of his Fourteenth Amendment due process rights based upon various problems with the procedures leading to his placement in the SHU and the "fail[ure] to provide meaningful classification reviews" (*id.* at 23);

      (14)&(15)    violations of other provisions of California constitutional and statutory law based on Plaintiff's "placement and retention . . . in administrative segregation . . . ." (*id.* at 23-24); and

      (16)    a violation of his rights because of certain Defendants' failures, in their supervisory capacity, to establish lawful policies and procedures and to train their subordinate employees properly (*id.* at 24-25).

## DISCUSSION

### I. STANDARD OF REVIEW

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which

1   are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary

2   relief from a defendant who is immune from such relief. *See* 28 U.S.C. §1915A(b)(1),(2).

3       To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a

4   right secured by the Constitution or laws of the United States was violated and (2) that the

5   violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487

6   U.S. 42, 48 (1988).

## LEGAL CLAIMS

### I.   INJUNCTIVE RELIEF

First, the threshold question presented is whether the court has jurisdiction to consider Plaintiff's claims for injunctive relief, in light of his release from incarceration. When an inmate is released from prison or transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, as is the case here, his claim for injunctive relief should be dismissed as moot. *See Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *Darring v. Kincheloe*, 783 F.2d 874, 876-77 (9th Cir. 1986). A claim that the inmate might be sent back to the prison where the injury occurred is too speculative to overcome mootness. *See Dilley*, 64 F.3d at 1369. Here, Plaintiff's release from incarceration renders moot his claims for injunctive relief. Therefore, the court DISMISSES Plaintiff's claims for injunctive relief.

### II.   MONETARY DAMAGES

#### A.   Due Process Violations and Supervisory Liability - Claims (5), (6), (13), (16)

The decision to place and retain a prisoner in administrative segregation must comport with procedural due process only if the specific deprivation at play constitutes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff's deprivation here—a prolonged term of segregation in the SHU at PBSP—suggests sufficient severity to implicate procedural due process protection. Assuming that this is the case, the Ninth Circuit has held that Plaintiff was entitled to the following procedures before placement in the SHU: (1) an informal non-adversary hearing within a reasonable time after being segregated, (2) notice of the charges or the reasons segregation is

4

being considered, and (3) an opportunity to present his views.  *See Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir 1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. There also must be "some evidence" to support the decision to segregate plaintiff for administrative reasons, *Toussaint*, 801 F.2d at 1104 (*citing Superintendent v. Hill*, 472 U.S. 445, 455 (1985)), and the evidence relied upon must have "some indicia of reliability," *Madrid v. Gomez*, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995).

In view of the following, the allegations in the complaint regarding Defendants' placement of Plaintiff and his resulting five-year long retention in administrative segregation in the SHU at PBSP without a fair hearing and Defendants' failure to act and investigate Plaintiff's claim that he is not a prison gang associate, when liberally construed, state cognizable claims under section 1983 for a denial of due process and for supervisory liability—claims (5), (6), (13), (16)—against the following Defendants at PBSP: Warden Clark E. Ducart; Correctional Administrator K. Osborne; Correctional Sergeant E. Enos; and Correctional Counselors M. Russell and Rush. Plaintiff also states the same due process and supervisory liability claims against the following Defendants at CDCR in Sacramento: Chief Deputy Administrators Suzan Hubbard and Melissa Lea; Chief of Classification Services Nancy Hardy; Associate Warden for Institutional Classification Committee G. Marshall; Correctional Counselor M. Brown; Chief Deputy Administrator Melissa Lea; Chief Dalinda Harman; Institutional Gang Investigation ("IGI") Correctional Officer G. Garrett; IGI Lieutenant C. M. Miramontes; Special Agent David Jakabosky; and Chief Deputy Wardens J. W. Moss and M. Williams.

**B.     Eighth Amendment Violations - Claims (5), (6), (8), (9)**

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *See id.* at 833; *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982), *overruled on other grounds*, *Sandin*, 515 U.S. 472; *Gillespie v. Civiletti*, 629 F.2d 637, 642 & n.3 (9th Cir. 1980).  A prisoner need not wait until he is actually assaulted to state a claim and obtain relief. *See Farmer*, 511 U.S. at 845; *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973); *Stickney v.*

5

1 *List*, 519 F. Supp. 617, 620 (D. Nev. 1981). If the court finds the Eighth Amendment's objective
2 and subjective requirements satisfied, it may grant appropriate relief. *See Farmer*, 511 U.S. at
3 845-46; *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

Plaintiff claims that his alleged erroneous classification as a gang member and placement in the SHU at PBSP—claim (5), Defendants' alleged failure to act or investigate his claim that he is not a prison gang associate—claim (6), the severely restrictive conditions of confinement in the SHU—claim (8) and their procedures in obtaining information from him—claim (9), all constitute cruel and unusual punishment under the Eighth Amendment. However, it is well established that the Eighth Amendment's prohibition against cruel and unusual punishment is not violated by classification programs which pursue "important and laudable goals" and are instituted under the State's authority to operate correctional facilities. *See Neal v. Shimoda*, 131 F.3d 818, 833 (9th Cir. 1997) (classification program designed to treat and reduce recidivism of sex offenders is well within state's authority to operate correctional facilities and does not violate contemporary standards of decency). Nor does misclassification inflict pain so as to be cruel and unusual punishment, in violation of the Eighth Amendment. *See Hoptowit v. Ray*, 682 F.2d 1237, 1255-56 (9th Cir. 1982); *Ramos v. Lamm*, 639 F.2d 559, 566-67 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981). Accordingly, Plaintiff's Eighth Amendment claims related to his alleged erroneous classification as a gang associate and placement in the SHU at PBSP, Defendants' failure to investigate his claim that he is not a prison gang associate, the SHU's severely restrictive conditions, and their procedures in obtaining information from him—the Eighth Amendment allegations in claims (5), (6), (8), (9)—are DISMISSED without leave to amend.

**C.  Conspiracy - Claim (7)**

Plaintiff alleges that prison officials violated his rights under 42 U.S.C. § 1985, which proscribes conspiracies to interfere with certain civil rights. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). A cause of action under § 1985(3) arises when two or more persons conspire to deprive another of equal protection of the laws or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). This requires a showing of some racial or class-based discrimination. The elements of a claim under the first clause of § 1985(3) are: (1) the

existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting injury. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000).

Liberally construed, Plaintiff's allegation that prison officials knowingly fabricated the "false[,] unreliable and insufficient evidence," dkt. 1 at 9, used for his gang validation and eventual placement in administrative segregation, states a cognizable claim for relief.

### D.  First Amendment Violations - Claim (1), (2), (3)

#### 1.  Rights to Freedom of Speech and Association - Claim (1), (2)

Plaintiff alleges that he was placed and held in the SHU based solely on his speech and "lawful association with family members, close family friends or with other prisoners where such association did not consist of and were not in furtherance of any illegal prison gang activity whatsoever . . . ." Dkt. 1 at 19. In claims (1) and (2), he argues that Defendants' aforementioned actions amount to a violation of his First Amendment rights to freedom of speech and association. Specifically, he argues that no legitimate penological interest is served when the mere fact of "association" is transformed into a pretext for keeping prisoners indefinitely in the SHU.

The First Amendment prohibits government officials from "abridging the freedom of speech . . . or the right of the people peaceably to assemble." U.S. Const. amend. I. Prisoners retain those First Amendment rights not inconsistent with their status as prisoners or with legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Although a prisoner does not lose all First Amendment protections when he enters prison, id., the "inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125-26 (1977). Prison regulations that infringe on a prisoner's First Amendment rights are valid so long as they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). A prison regulation that impinges on a prisoner's First Amendment right to free speech is valid only if it meets the *Turner* test. *Shaw v. Murphy*, 532 U. S. 223, 229 (2001)  In addition, although the Supreme Court has held that the First Amendment right to freedom of association is among the rights least compatible with

7

1  incarceration, *Overton v. Bazzetta*, 539 U. S. 126, 131 (2003), it has not determined the scope of
2  associational rights that prisoners might retain, *id.* at 132.
3      At this stage of the proceedings, the court is unable to say that holding a prisoner in the
4  SHU based solely on his speech and associational activities with potential gang members, and not
5  on illegal gang related activities, is reasonably related to legitimate penological interests.
6  Liberally construed, Plaintiff's allegations that he was placed in the SHU in violation of his rights
7  to freedom of speech and association states a cognizable First Amendment claim.

### 2. Retaliation - Claim (3)

Plaintiff also claims that he was placed in the SHU in retaliation for the exercise of his "constitutionally protected right to engage in legal and legitimate jailhouse lawyer activities related to and in furtherance of providing legal assistance to other prisoners . . . ." Dkt.1 at 19-20.

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983 even if the act, when taken for different reasons, would have been proper. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (same). Liberally construed, Plaintiff's allegations satisfy the pleading requirements for a First Amendment retaliation claim.

### E. State Law Violations - Claims (11), (12), (14), (15)

Plaintiff alleges that Defendants' actions relating to his placement and five-year long retention in administrative segregation in the SHU in violation of his federal due process rights also violates various provisions of California constitutional and statutory law. The federal

8

1  supplemental jurisdiction statute provides that "'district courts shall have supplemental
2  jurisdiction over all other claims that are so related to claims in the action within such original
3  jurisdiction that they form part of the same case or controversy under Article III of the United
4  States Constitution.'" 28 U.S.C. § 1367(a).

Plaintiff asserts supplementary state law claims that the actions of Defendants violated the rights afforded to him by California constitutional and statutory law. Liberally construed, Plaintiff's allegations satisfy the statutory requirement. Accordingly, the court will exercise supplemental jurisdiction over Plaintiff's state law claims - claims (11), (12), (14) and (15).

### F. Equal Protection Violation - Claims (4) and (10)

Plaintiff alleges that he was treated differently from similarly situated SHU inmates solely because of his race. It seems that in claim (10) Plaintiff alleges that, as a Hispanic SHU inmate, Defendants are "intentionally discriminating against him on the basis of his membership in a racial group," dkt. 1 at 22, which could be construed as a claim that Hispanic inmates are subject to different housing restrictions than other inmates.

A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent by a state actor. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant acted at least in part because of the plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (claim that alleged harmful treatment but mentioned nothing about disparate treatment was properly dismissed).

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). Invidious racial discrimination such as racial segregation, which is unconstitutional outside prisons, also is unconstitutional within prisons. *Johnson v. California*, 543 U.S. 499, 505-06 (2005). A prison classification based on race is immediately suspect and is subject to the same strict scrutiny as a racial classification outside prison. *Id.* at 508-10. Prison

1  officials must therefore demonstrate that the race-based policy or action is narrowly tailored to
2  serve a compelling state interest.  *Id.* at 510-11; *Richardson v. Runnels*, 594 F.3d 666, 671 (9th
3  Cir. 2010) (applying *Johnson* to racial lockdowns in response to prison disturbances).  *Johnson*
4  did not rule out race-based classifications and did not eliminate prison security as a reason for such
5  classifications, but instead determined that prison officials must demonstrate that race-based
6  policies are narrowly tailored to address a compelling government interest such as prison security.
7  *See Johnson*, 543 U.S. at 511-13, 515 (remanding case for determination of whether Department
8  of Corrections' policy of temporarily segregating inmates by race when they arrive in the prison
9  system initially or are transferred to a new prison is narrowly tailored to serve a compelling state
10 interest).
11    Plaintiff's allegations present a constitutionally cognizable equal protection claim.
12     **G.**    **Claims Against State Government Officials**
13    Plaintiff names as Defendants CDCR Secretary James Beard and former Secretary
14 Matthew Cate.
15    The Eleventh Amendment bars from the federal courts suits against a state by its own
16 citizens, citizens of another state or citizens or subjects of any foreign state.  *See Atascadero State*
17 *Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).  This Eleventh Amendment immunity also extends to
18 suits against a state agency, *see, e.g.*, *Allison v. Cal. Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969)
19 (California Adult Authority and San Quentin Prison not subject to suit); *Bennett v. California*, 406
20 F.2d 36, 39 (9th Cir.) (California Adult Authority and CDC not subject to suit), *cert. denied*, 394
21 U.S. 966 (1969), and to suits for damages against state officials acting in their official capacities,
22 *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-121 (1984).  Such immunity
23 includes state law claims brought against a state in federal court under the supplemental
24 jurisdiction statute.  *See Raygor v. Regents of the Univ. of Minn., et al.*, 534 U.S. 533, 541-42
25 (2002).  Sovereign immunity also shields the federal government and its agencies from suit.  *See*
26 *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir.
27 1995).
28    The one exception to sovereign immunity is that which allows state officials in their

1  official capacities to be sued for prospective injunctive relief. *See Kentucky v. Graham*, 473 U.S.
2  159, 167 n. 14 (1985); *Ex parte Young*, 209 U.S. 123, 159-60 (1908). However, the exception is
3  limited to prospective injunctive relief from continuing or impending state action which violates
4  the federal constitution or a federal statute, and the state official must have "some connection with
5  the enforcement of the act." *See Confederated Tribes & Bands v. Locke*, 176 F.3d 467, 469 (9th
6  Cir. 1999) (quoting *Ex Parte Young*, 209 U.S. at 157).

Plaintiff's claim against Defendants Beard and Cate in their official capacities are barred by the Eleventh Amendment and must be dismissed. The *Ex Parte Young* exception does not apply because none of the named state officials are capable of providing Plaintiff with prospective injunctive relief. Accordingly, all claims against these aforementioned Defendants are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Plaintiff's claims for injunctive relief are DISMISSED as moot.

2. Plaintiff's Eighth Amendment claims related to his alleged erroneous classification as a gang associate and placement in the SHU at PBSP, Defendants' failure to investigate his claim that he is not a prison gang associate, the SHU's severely restrictive conditions, and their procedures in obtaining information from him—the Eighth Amendment allegations in claims (5), (6), (8), (9)—are DISMISSED without leave to amend.

3. Plaintiff's claim against Defendants Beard and Cate in their official capacities are barred by the Eleventh Amendment and are therefore dismissed with prejudice.

4. All remaining claims may proceed, as explained above.

5. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint and all attachments thereto (dkt. 1), a Magistrate Judge jurisdiction consent form, and a copy of this Order to: the following Defendants at PBSP: **Warden Clark E. Ducart; Correctional Administrator K. Osborne; Correctional Sergeant E. Enos; and Correctional Counselors M. Russell and Rush**; as well the following Defendants at CDCR in Sacramento: **Chief Deputy**

11

1  **Administrators Suzan Hubbard and Melissa Lea; Chief of Classification Services Nancy**
2  **Hardy; Associate Warden for Institutional Classification Committee G. Marshall;**
3  **Correctional Counselor M. Brown; Chief Deputy Administrator Melissa Lea; Chief Dalinda**
4  **Harman; IGI Correctional Officer G. Garrett; IGI Lieutenant C. M. Miramontes; Special**
5  **Agent David Jakabosky; and Chief Deputy Wardens J. W. Moss and M. Williams.**

The Clerk shall also mail a copy of the complaint and a copy of this Order to the State Attorney General's Office in San Francisco. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

6. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later. **Defendants shall also respond to the Notice of Assignment of Prisoner Case to a United States Magistrate Judge for Trial by filing a consent/declination form on the date the Answer is due.**

7. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

   a. No later than **sixty (60) days** from the date their answer is due, Defendants

1  shall file a motion for summary judgment or other dispositive motion. The motion must be
2  supported by adequate factual documentation, must conform in all respects to Federal Rule of
3  Civil Procedure 56, and must include as exhibits all records and incident reports stemming from
4  the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[2] notice
5  so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to
6  oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out
7  in Rand must be served concurrently with motion for summary judgment). A motion to dismiss
8  for failure to exhaust available administrative remedies must be accompanied by a similar notice.
9  However, the court notes that under the new law of the circuit, in the rare event that a failure to
10 exhaust is clear on the face of the complaint, Defendants may move for dismissal under Rule
11 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion.
12 *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315
13 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative
14 remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a
15 defendant as an unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is not clear on
16 the face of the complaint, Defendants must produce evidence proving failure to exhaust in a
17 motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most
18 favorable to Plaintiff shows a failure to exhaust, Defendants are entitled to summary judgment
19 under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the
20 district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at
21 1168.
22     If Defendants are of the opinion that this case cannot be resolved by summary judgment,
23 they shall so inform the court prior to the date the summary judgment motion is due. All papers
24 filed with the court shall be promptly served on Plaintiff.
25         b.   Plaintiff's opposition to the dispositive motion shall be filed with the court
26 and served on Defendants no later than **twenty-eight (28) days** after the date on which
27
28

---

[2] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

Defendants' motion is filed.

    c. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

Plaintiff also is advised that—in the rare event that Defendants argue that the failure to exhaust is clear on the face of the complaint—a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents—documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed

issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse Defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

d.  Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

e.  The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

8.  Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

9.  All communications by Plaintiff with the court must be served on Defendants or their counsel, once counsel has been designated, by mailing a true copy of the document to them.

10. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the court has been returned to the court as not deliverable, and (2) the court fails to receive within sixty days of this return a written communication from the pro se party indicating a current address. *See* L.R. 3-11(b).

11. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the deadline sought to be extended.

IT IS SO ORDERED.

Dated: April 3, 2015

_____
DONNA M. RYU
United States Magistrate Judge

15